

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-75,611

### EX PARTE BRIAN KEITH KINNETT, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM WICHITA COUNTY

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, KEASLER and HERVEY, JJ., joined. WOMACK, J., filed a concurring opinion. HOLCOMB, J., filed a concurring opinion in which WOMACK, J., joined. MEYERS, J., filed a dissenting opinion. COCHRAN, J., dissented.

### O P I N I O N

A jury convicted applicant of possession of methamphetamine in an amount of 400 grams or more, with intent to deliver. The jury sentenced him to eighty-five years' incarceration and a $250,000 fine. The judgment was affirmed on direct appeal. *Kinnett v. State*, No. 2-03-292-CR, 2004 Tex. App. LEXIS 6119 (Tex. App.–Fort Worth, delivered July 8, 2004, pet. ref'd)(not designated for publication). Applicant filed an application for writ of habeas corpus. We granted the writ in order to determine:

1) whether the inclusion of the weight of the entire contents of the toilet bowl in the

weight of the controlled substance was an absurd result that the Legislature could not have intended; and

2) whether the inclusion of the weight of the entire contents of the toilet bowl violated due process.

The parties have each filed a brief addressing these issues.

## The Underlying Facts

The court of appeals's opinion, the trial court's findings of fact and conclusions of law, and our review of the copy of the reporter's record included in the writ record reflect that, in the process of investigating the theft of motorcycles, a local police officer, accompanied by a county deputy sheriff, went to a local address to arrest applicant on pending traffic warrants. After knocking on the front door of a mobile home at that address, the officers heard scurrying noises from inside, but no one responded to the knocking. One of the officers walked towards the back of the trailer, where he smelled a strong chemical odor that he associated with the manufacture of methamphetamine. The officer returned to the front of the trailer and spoke with a woman who had just arrived at the trailer. He informed her that they were looking for applicant. When the woman went into the trailer, the officers followed "because [they] didn't know what was going on in there." Applicant appeared from the other end of the trailer, walking towards the front door. The officers recognized applicant, placed him under arrest on the outstanding warrants, and escorted him and the woman out of the residence and onto the front porch. After getting a warrant to search the trailer, the officers recovered six hundred and sixty-three grams of water and liquid methamphetamine from the trailer's bathroom. The investigator who retrieved the evidence testified that the mixture was in the toilet

bowl and was dipped out and placed into an evidence jar.[1]

After the trial court denied applicant's motion to suppress the liquid methamphetamine-water mixture, a jury convicted applicant of possession of a controlled substance with intent to deliver. The court of appeals affirmed the trial court's judgment, and we refused discretionary review. *Kinnett*, *supra*.

## Legislative Intent and Absurd Results

Applicant first asserts that, while the Legislature did indeed intend "the inclusion to be used in calculating the aggregate weight of the controlled substance," such inclusion is absurd because "the controlled substance in question had no value to anyone, except the state."[2] Nevertheless, applicant also asserts that "the Texas Legislature intended just such a use of [the applicable Texas Health & Safety Code sections]." Applicant thus asserts that the inclusion of the weight of the toilet bowl water was an absurd result that the Legislature did indeed intend. At oral argument, applicant's attorney reiterated his belief that the Legislature did intend just such an absurd result.[3] And in

---

[1] At the time of post-conviction testing, the mixture weighed 405.63 grams, with the decrease in weight probably due to evaporation during the period between seizure and testing. The amount of methamphetamine then in the entire sample was 0.00675 percent, or 0.0274 grams. Extrapolating to the original weight of 663 grams, the same weight of methamphetamine would have been 0.00413% of the mixture. It is impossible to know if, or how much of, the original methamphetamine content decomposed between the time of seizure and the time of testing.

[2] To illustrate such absurdity, applicant sets out examples: 1) drugs were flushed down the toilet just as police arrive at the bathroom door, police dig up the attached full 6,000-pound septic tank, and include the entire weight of the septic tank's contents as an adulterant or dilutant; 2) a safe would qualify as an "other substance containing" the controlled substance stored therein, thus the aggregate weight of the controlled substance would include the weight of the safe; 3) a controlled substance becomes enmeshed in the carpet of a car and the suspect is charged with the weight of the car; 4) a controlled substance is accidently or purposefully dropped into a lake, and the suspect is charged with the weight of the lake; 5) pants with a controlled substance in a pocket are placed in a clothes washer and the owner of the pants is charged with the weight of the washing water, the washer, and the pants. (Applicant's brief, pp. 22-23.)

[3] The state agrees that including the water in the toilet bowl in the aggregate weight was the legislature's intent, but it does not agree that such a result is absurd. This Court offers no opinion on whether the result is absurd or, if absurd, whether the legislature intended the absurd result, as that issue is not before it.

addressing the Legislature's treatment of adulterants and dilutants, based upon such legislative action applicant concludes that "[t]his is why what has happened to [him] is exactly what the Legislature intended." (Applicant's brief, p. 11.) Because applicant and state agree that this is "exactly what the Legislature intended," we need not consider the first issue, "whether the inclusion of the weight of the entire contents of the toilet bowl in the weight of the controlled substance was an absurd result that the Legislature could not have intended."

### Due Process

We now turn to applicant's second issue: "whether the inclusion of the weight of the entire contents of the toilet bowl violated due process." Applicant argues "that the statutory definition for controlled substance and for 'adulterants and dilutants' is unconstitutional, as the over-broad definitions bear no rational relationship to a legitimate state objective and are vague, thus constituting violations of [his] rights to substantive due process and equal protection." Applicant questions the constitutionality of the legislature's wording in TEX. HEALTH & SAFETY CODE § 481.002(49), which defines "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." He asserts that "any material" "is over-inclusive and will not survive the 'rational basis' test as that statute was used against [him] in the facts of this case." (Applicant's brief, p. 15)

Applicant's complaint presents a facial challenge to the statute. The parties agree that his challenge of the statute as facially unconstitutional was not waived by his failure to raise it at trial. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990), and *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.–Houston [1ˢᵗ Dist.], no pet.). "A claim that a statute is unconstitutional 'on its face' is a claim that the statute, by its terms, always operates unconstitutionally." *Gillenwaters v.*

*State*, 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006)(citation omitted).

In a substantive due-process analysis, we determine whether the claimant had a protected liberty interest, and if so, whether the government deprived him of such interest arbitrarily and capriciously. *Laney v. State*, 223 S.W.3d 656, 667 (Tex. App.–Tyler, 2007), *citing Foucha v. Lousiana*, 504 U.S. 71, 80 (1992). If a fundamental right is not implicated, substantive due process requires only a rational relationship between a legitimate state interest and the statute. *Id., citing Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). A rational-relationship test is applied when the rights or interests affected are not fundamental, and in such a case, a statute will be upheld if it bears a rational relationship to a legitimate state interest. *Ex parte Morales*, 212 S.W.3d 483, 493 (Tex. App.–Austin 2006, pet. ref'd), *citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

Applicant acknowledges that "[n]o court has held that a person has a fundamental right to possess methamphetamine or to possess toilet water, nor has any court held that the method of weighing controlled substances implicates a fundamental right,[4] therefore the Court should use the rational basis test." (Applicant's brief, p. 17.) Thus we must determine whether there is a rational relationship between the state's legitimate interest and the statute.

The state argues that § 481.002(49) implicates several state interests, including an interest in preventing criminals from diluting their drugs in order to evade prosecution or to reduce punishment. It argues that, if illegal drugs can be successfully destroyed or gotten rid of by the possessor before the drugs can be seized by law enforcement, the perpetrator can be punished only

---

[4] We observe that liquids are typically measured by volume rather than by mass or weight, but the parties do not direct us to any indication that the legislature has made such a distinction in possessing a liquid as opposed to possessing a solid form of a controlled substance.

for tampering with physical evidence, a third-degree felony, while being caught in possession of a large quantity of liquid or solid illegal drugs subjects the perpetrator to much wider ranges of punishment. It adds that, faced with a choice of being caught with a large quantity of illegal drugs and attempting to flush the drugs or pour them into bleach when the police approach, the probable choice is to dispose of the drugs in order to avoid a higher punishment range. (State's brief, p. 27-28.) It also asserts that the state has an interest in alleviating the problems of proof that existed for prosecutors, in trials for possession and manufacturing of illegal drugs, before the legislature modified the language of § 481.002(49); "prosecutors were faced with the daunting task of proving that the defendant added the alleged adulterant or dilutant with the intent to increase the bulk of the product." (State's brief, p. 28.) The state thus concludes that the toilet-bowl water was properly aggregated with the liquid methamphetamine.[5]

Based upon applicant's facial challenge as presented and argued, we determine that there is a rational relationship between the state's legitimate interest and the statute. The state has an interest in deterring and punishing possession and manufacture of illegal drugs, and the legislature has determined that "any material" that increases the bulk or quantity of a controlled substance is an adulterant or dilutant and that its weight is to be included in the determination of the punishment range for possession of controlled substances. In *Wright v. State*, 201 S.W.3d 765 (Tex. Crim. App. 2006), and *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005), we recognized that the legislature intended to abolish past limits on what substances are adulterants or dilutants. Applicant does not convince us that such a determination is not rationally related to the state's legitimate

_____

[5] The Court expresses no opinion as to applicability of its analysis in this case to a case in which the recovered controlled substance is a solid.

interest in deterring and punishing possession of illegal drugs. Applicant also does not show that he has been arbitrarily or capriciously deprived of any liberty interest.[6]

With respect to complaints about a statute being void for vagueness, we have explained that

[i]t is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement. Although a statute is not impermissibly vague because it fails to define words or phrases, it is invalid if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited.

*State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006)(citations omitted).

In the instant case, we conclude that TEX. HEALTH & SAFETY CODE § 481.002(49)'s definition of "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance," contains objective criteria for determining what conduct is. Read in conjunction with TEX. HEALTH & SAFETY CODE § 481.002(5), which includes adulterants and dilutants within the definition of a controlled substance and their weights within "the aggregate weight of any mixture, solution, or other substance containing a controlled substance," § 481.002(49) defines the criminal offense of possession of a controlled substance both with sufficient clarity that persons of ordinary intelligence can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement. We conclude that the statute is not facially unconstitutional; it

---

[6] We also observe that the United States Supreme Court has upheld the constitutionality of a federal statute which based the sentence for drug distribution on the weight of the entire "mixture or substance" containing a detectable amount of the drug. *Chapman v. United States*, 500 U.S. 453 (1991). It held that Congress had a rational basis for its choice of penalties for such drug distribution and that assigning more severe penalties to the distribution of larger quantities of drugs, measured according to the "street weight" of the drugs in the diluted form in which they are sold rather than according to the net weight of the active component, was a rational sentencing scheme. *Id*. at 465.

adequately apprises a person of ordinary intelligence of what conduct is prohibited and is thus not unconstitutionally over-broad or void for vagueness.

Applicant also argues a claim of equal protection. Because we filed and set this writ application to determine only the issue of constitutionality based upon due process, we do not address the equal-protection claim.

We deny relief on applicant's writ of habeas corpus.

Delivered: February 13, 2008
Do not publish