Tina Marie WRIGHT a/k/a Tina Marie Nagel, Appellant

v.

The STATE of Texas.

No. PD–0513–05.

Court of Criminal Appeals of Texas.

Sept. 20, 2006.

Stan Brown, Abilene, for Appellant.

Patricia K. Dyer, Asst. District Atty., Abilene, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., join.

In 2001, a jury convicted Appellant of possession of methamphetamine of less than 400 grams but more than 200 grams, and the trial court sentenced her to imprisonment for life in the Texas Department of Criminal Justice—Correctional Institutions Division. At the time of her conviction, the definition of a controlled substance was: "[A] substance, including a drug, an adulterant, a dilutant, an immediate precursor, listed in Schedules I through V or Penalty Groups 1, 1–A, or 2 through 4. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance." TEX. HEALTH & SAFETY CODE § 481.002(5) (Vernon Supp.2000).[1] Appellant appealed her conviction, claiming that the evidence was insufficient to prove that the aggregate weight of the substance possessed was more than 200 grams and that § 481.002(5) was unconstitutional in failing to give notice that unusable, toxic liquids were included in the weight of a controlled substance.

The Eleventh Court of Appeals affirmed Appellant's conviction in an unpublished opinion,[2] which, we concluded on review, did not adequately address her arguments. *Wright v. State*, No. 811–03, 2003 WL 22909085 (Tex.Crim.App. Dec.10, 2003) (not designated for publication). We vacated the judgment and remanded the case for further consideration of Appellant's claims. We specifically directed the court to conduct a statutory-construction analysis of § 481.002(5) as part of Appellant's sufficiency challenge, and to undertake an analysis of her constitutional claims. On remand, the court of appeals again affirmed Appellant's conviction. *Wright v. State*, No. 11–02–00006–CR, 2005 WL 221357, 2005 Tex.App. LEXIS 377 (Tex. App.-Eastland Jan. 20, 2005) (not designated for publication). We granted Appellant's petition for discretionary review. She claims that the court of appeals did not comply with our previous order by failing to determine whether the definition of the term "controlled substance" in § 481.002(5) leads to an absurd result the legislature could not have intended.

---

1. After the commission of Appellant's offense, the legislature amended § 481.005(2) by excluding an immediate precursor from the definition. 2001 Tex. Gen. Laws 1188. Otherwise, the provision has remained substantively the same.

2. *Wright v. State*, No. 11–02–00006–CR, 2005 WL 221357, 2003 Tex.App. LEXIS 2865 (Tex. App.-Eastland Apr. 3, 2003) (not designated for publication).

We agree that the court of appeals did not undertake a sufficient statutory-construction analysis under *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991). Therefore, we will resolve the issues that Appellant has presented for review.

## FACTS

During a search of Appellant's house, conducted in conjunction with the arrest of her husband on an outstanding warrant, police officers found in an open closet a clear glass jar filled with a cloudy liquid. When the officers inquired as to the contents of the glass jar, Appellant replied that it contained "liquid with dope in it." Appellant was placed under arrest, and the officers searched her and discovered a white powder in her pants pocket. Appellant's husband then led the officers to the attic, which housed several items used in the manufacture of methamphetamine, including an Everclear bottle which he admitted was being used as a pill soak and several boxes of suphedrine pills. Initially, Appellant was charged only with the possession of methamphetamine found on her person, which consisted of 0.73 grams of a gummy, powdery substance containing methamphetamine. After the lab results determined that there were traces of methamphetamine on the items in the attic, she was charged with possession in the amount of more than 400 grams.

As the court of appeals detailed in its most recent opinion, the record shows that the search of appellant's residence produced the following: a glass jar containing 305.62 grams of liquid; an Everclear bottle containing 1,210 grams of liquid and powder; coffee filters containing a trace amount of methamphetamine; and paper towels containing 15.92 grams of a brown, powdery substance identified as "bones," the substance discarded after methamphetamine has been extracted. *Wright,* 2005 WL 221357, at *2, 2005 Tex.App. LEXIS 377, at *4–5.

At the trial, the State's expert, Eddie Lee Dickie of the Department of Public Safety in Abilene, testified that although he had not tested the solution in the glass jar to determine what percentage was methamphetamine, its purity was clearly weak. Appellant's chemist, Thomas Ekis of Forensic Consultant Services, testified that the glass jar contained only about 0.05% methamphetamine by concentration, or only 0.1528 grams of pure methamphetamine, which was probably residue from the drug's production. He explained that the remaining substance in the glass jar was a toxic hydrocarbon solution, such as gasoline or Coleman fuel.

With regard to the Everclear bottle, Dickie said it appeared to be a pill soak, even though it tested positive for methamphetamine, which is not normal for pill soaks. Ekis testified that the contents of the Everclear bottle contained 0.003% methamphetamine by concentration, or only 0.036 grams pure methamphetamine, probably as a result of being tainted by the drug. He said that the Everclear bottle contained mostly ethyl alcohol, commonly used to clean or extract the precursor. He also testified that the "bones" in the paper towel contained 0.001 percent methamphetamine, which would have yielded 0.00015 grams of actual methamphetamine.

Ekis testified that the total of the amount of methamphetamine on the items in the attic and the amount in Appellant's pocket was 0.918 grams. However, he also admitted that if "controlled substance" was defined as the aggregate weight of a mixture or solution containing a controlled substance, then the exhibits contained over 1,500 grams of the controlled substance methamphetamine. The jury convicted Appellant of the lesser-included offense of

possession of more than 200 grams and less than 400 grams of a controlled substance.

## COURT OF APPEALS

In its original opinion affirming Appellant's conviction, the court of appeals concluded that "[t]he State's expert supplied the proof that appellant possessed a controlled substance which had an aggregate weight of more than 200 grams." *Wright*, 2005 WL 221357, at *1, 2003 Tex.App. LEXIS 2865, at *4. On review, we concluded that the court of appeals should have addressed Appellant's argument that interpreting the statute to include unusable, toxic liquids in determining the weight of the controlled substance was an absurd result the legislature could not have intended. *Wright*, 2003 WL 22909085, citing *Boykin*, 818 S.W.2d 782. We explained that a statutory construction analysis was a "key component" of Appellant's legal and factual sufficiency challenges and instructed it to reconsider these points of error. On remand, the court of appeals held for the second time that the evidence in the case was both legally and factually sufficient to support the jury's judgment of conviction. The court resolved the issue by saying, "Testimony showing that a mixture, solution, or other substance contains a controlled substance is sufficient to support a conviction for possession of that controlled substance in an amount equal to the aggregate weight of the mixture or solution." *Wright*, 2005 WL 221357, at *2, 2005 Tex.App. LEXIS 377, at *7.

## ISSUE GRANTED

We granted Appellant's second petition for discretionary review on the following ground:

> The Court of Appeals erred by its failure to address the issue of the weight of

methamphetamine determination as ordered by the Court of Criminal Appeals; whether to include in the weight of the controlled substance unusable, toxic liquids was an absurd result the legislature could not have intended; which proper review would have shown that the evidence was both legally and factually insufficient to support a finding of possession of more than 200 grams and less than 400 grams of methamphetamine.

## ANALYSIS

We explained in *Boykin* that courts must interpret an unambiguous statute literally, unless doing so would lead to an absurd result that the legislature could not have intended. By beginning with the plain language of a statute to interpret its meaning, courts "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin*, 818 S.W.2d at 785 (citing *Camacho v. State*, 765 S.W.2d 431 (Tex.Crim.App. 1989)). However, if a literal reading of the statute would lead to an absurd result, there is an exception to the plain meaning rule. We established in *Boykin*:

> If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history.

818 S.W.2d at 785–86.

The court of appeals undertook the first part of a statutory construction analysis by discerning and applying the plain meaning of § 481.002(5). Relying on our decision in

*Melton v. State,*[3] it concluded that the experts' testimony—that the solution or mixture in the glass jar and the mixture or solution in the Everclear bottle contained methamphetamine, and that the weight of each mixture or solution was over 200 grams—was sufficient to sustain Appellant's conviction for possession of more than 200 grams under § 481.002(5). *Wright,* 2005 WL 221357, at *2, 2005 Tex. App. LEXIS 377, at *7.[4] However, the question that we instructed the court of appeals to answer requires it to go beyond the plain language of § 481.002(5) to determine whether this language produces an absurd result, namely Appellant's conviction for possession of more than 200 grams of methamphetamine in the instant case. The court of appeals did not undertake this next step in its statutory construction analysis.

In her briefs to the court of appeals and this Court, Appellant contends that the "absolute absurdity" of equating possession of a minute amount of methamphetamine in an unmarketable and unusable liquid with possession of over 200 grams of actual methamphetamine ready for delivery is "patently obvious." She analogizes the result to determining that a 10,000 gallon swimming pool that contains one drop of methamphetamine yields 10,000 gallons of methamphetamine for the purposes of possession and conviction. On the

other hand, the State submits that the statute's inclusion of manufacturing by-products in establishing the aggregate weight of a controlled substance is not absurd, given that a different construction would punish drug manufacturers less severely than the drug dealers.

Because the court of appeals failed to conduct a key component of Appellant's statutory construction analysis, we will consider whether, given the facts of the instant case, Appellant's conviction for over 200 grams is an absurd result that the legislature could not have intended. In *Seals v. State,* 187 S.W.3d 417 (Tex. Crim.App.2005),[5] we reversed the lower court's decision that blood mixed with methamphetamine in a vial and syringe could not be included in the aggregate weight of the drug to convict appellant for a greater amount of methamphetamine under § 481.002(5), and held that the definition of adulterants and dilutants in § 481.005(49) did not lead to an absurd result that the legislature could not have intended. In that case, the blood became mixed with the drug when the methamphetamine was injected, so the contents of the vial were leftover after the drug had been used. We stated that "The literal meaning of the legislature's adulterant and dilutant definition is that any substance that is added to or mixed with a controlled

---

**3.** 120 S.W.3d 339, 343–44 (Tex.Crim.App. 2003) (holding that it was reasonable for the jury to infer that the 35 to 40 rocks composed a mixture of crack cocaine, even if some of the rocks did not contain any cocaine, and that the State had to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equaled the alleged minimum weight). The court of appeals also cited *Dowling v. State,* 885 S.W.2d 103, 127 (Tex.Crim.App.1994) (op. on reh'g on court's motion), for the proposition that the 1989 amendments to the Texas Controlled Substances Act would produce the result in Appellant's case, and *Ingram v.*

*State,* 124 S.W.3d 672, 675 (Tex.App.-Eastland 2003, no pet.), which quoted the 2000 version of § 481.005(2).

**4.** Even the defense expert at trial acknowledged that under the language of § 481.005(2), the entire mixture or solution containing the methamphetamine would be included in determining the weight of the methamphetamine.

**5.** Our opinion in *Seals* was handed down after the court of appeals had decided the case before us.

substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." *Seals*, 187 S.W.3d at 420. The case before us is even more straightforward because the toxic liquid mixed with the methamphetamine in this case is a necessary part of the manufacturing process. If it is not absurd to define adulterant and dilutant as including waste product left over after the drug is used, then it clearly is not absurd to include byproducts necessary to the manufacturing process in that definition. We uphold our decision in *Seals* and conclude that it does not lead to an absurd result to include the unusable toxic liquids in the aggregate weight of the controlled substance.

### CONCLUSION

Although the court of appeals failed to fully consider Appellant's statutory construction challenge, the court properly determined that under the plain language of § 481.002(5), evidence indicating that the mixture contained a controlled substance was sufficient to support the conviction for possession in an amount equal to the aggregate weight of the mixture. The court of appeals is affirmed.

HOLCOMB, J., filed a dissenting opinion.

HOLCOMB, J., filed a dissenting opinion.

I respectfully dissent. I would hold that the evidence adduced at appellant's trial was legally insufficient to support her conviction.

As the majority opinion explains, a jury found appellant guilty of the first-degree-felony offense of possession of methamphetamine in the amount of 200 grams or more but less than 400 grams, even though the evidence adduced at her trial showed that she had actually possessed less than one gram of methamphetamine, with most of that tiny amount having been dissolved in several hundred grams of toxic liquid. This Court, citing its decision in *Seals v. State*, 187 S.W.3d 417 (Tex.Crim.App. 2005), now affirms appellant's conviction on the theory that "it is not absurd [to] define adulterant and dilutant as including ... byproducts necessary to the manufacturing process."

I am persuaded that, with our decision in *Seals* and, now, our decision in this case, we are wandering far afield from what the Legislature had in mind in terms of punishing drug offenders. I continue to think that the dissent in *Seals* got it right:

> Chapter 481 of the Texas Health and Safety Code sets out the Texas Controlled Substances Act. This act provides higher penalties and longer sentences for those who manufacture, distribute, or possess a larger quantity of drugs. The gravamen of the offense is the quantity of the usable drug, not its purity. The federal Anti–Drug Abuse Act and the pertinent sentencing guidelines are structured in a similar manner. As the [United States] Supreme Court noted, "Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the pure drug involved, is used to determine the length of the sentences."

> Under the market approach, the penalties for drug trafficking are "graduated according to the weight of the drugs in whatever form they [are] found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." The Supreme Court explained that "Congress clearly intended the dilutant, cutting agent, or carrier medium to be included in the weight of those drugs for sentencing purposes.

Inactive ingredients are combined with pure heroin or cocaine, and the mixture is then sold to consumers as a heavily diluted form of the drug."

The Texas Legislature, like Congress, was concerned with consumable drug mixtures, mixtures that will or have reached citizens on the streets. Thus, the entire weight of drug mixtures which are usable in the chain of distribution are considered in determining the offense level. How do we know that the Texas Legislature has implemented a market-based approach toward drug crimes? We look at the plain language of the statute. The weight of a drug consists of: (1) the controlled substance itself; and (2) any adulterants or dilutants. Adulterants and dilutants are any material *"that increases the bulk or quantity of a controlled substance."* If, in fact, the Legislature did not care whether a substance had the effect of increasing the wholesale or retail bulk of the drug, it would not have added this requirement. It would simply have said that the weight of a drug consists of (1) the controlled substance itself; and (2) any material with which the drug is mixed or in which the drug is found, which would inevitably include even the wrapping material, the waste product, and any toxic remains. There must have been a reason why the Legislature used language that the material must be one that increases the bulk of the drug itself. The clear reason is that Legislature wanted to punish drug traffickers and users based upon the weight of the usable or salable product.

\* \* \*

It would be irrational ... to consider unusable, unmarketable, toxic, or waste material as an adulterant or dilutant that increases the bulk of the controlled substance. By definition, the waste product is what is left over after the drug has been manufactured, delivered, or consumed. It is function, not form, that counts. An adulterant or dilutant functions as an aid to drug distribution or use, not as a dangerous deterrent to a drug's consumption.

*Seals v. State,* 187 S.W.3d at 423–426 (Cochran, J., dissenting) (emphasis in original; footnotes and citations omitted).

I respectfully dissent.