**Rhonda Renee JONES, Appellant**

v.

**The STATE of Texas.**

**No. PD–1170–06.**

Court of Criminal Appeals of Texas.

Oct. 10, 2007.

James Rasmussen, Wichita Falls, for appellant.

John Brasher, Asst. D.A., Wichita Falls, Matthew Paul, State's Attorney, Austin, for state.

## *OPINION*

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, PRICE, WOMACK, KEASLER and HERVEY, JJ., joined.

Appellant was charged by indictment with possession of a controlled substance with intent to deliver in an amount of 400 or more grams and with evading arrest or detention using a vehicle. A jury found her guilty of both possession of a controlled substance with intent to deliver and of evading arrest "as alleged in the indictment." The trial court assessed punishment at twenty-five years' imprisonment and a $10,000 fine for drug possession and two years' incarceration in a state jail for evading arrest. On appeal, appellant raised three points of error, claiming legal and factual insufficiency of the evidence to sustain a conviction and egregious error in failing to include a jury-charge instruction

on "accomplice as a matter of law." The court of appeals overruled those points and affirmed the judgment of the trial court. *Jones v. State*, 195 S.W.3d 279 (Tex.App.-Fort Worth, 2006). We granted appellant's petition for discretionary review, which raised two grounds. We affirm the judgment of the court of appeals.

The record reflects that appellant and a companion, Benner, were sitting inside a vehicle that was parked along a local road. Two deputy sheriffs came upon the vehicle. When the deputies' vehicle pulled over behind appellant's parked vehicle, she drove away. The deputies pursued her, and she slowed down and pulled over as if to stop. The deputies also pulled over. When one of the deputies began to get out of the parked patrol car, appellant again drove away. The deputies again pursued. During the pursuit, the deputies observed several items being thrown from the vehicle. Ultimately appellant actually stopped, and the deputies arrested both appellant and Benner. During a search of the vehicle, deputies found a bottle of bleach that contained a large amount of methamphetamine.

During the trial, Benner testified for the state and said that he and appellant had been making methamphetamine and were "about three-quarters of the way through" when the deputies had pulled up. He testified in some detail about the procedures and materials that they had been using in making the methamphetamine and admitted that he had thrown some of those materials out of the car window during the pursuit. He also testified that he had poured the liquid methamphetamine into a bottle of bleach because he had panicked and thought that the methamphetamine might "go away," i.e. be destroyed by the bleach. Benner also indicated that it had been his conscious intent to manufacture methamphetamine and

that he had been in a joint venture with appellant with their ultimate goal to produce methamphetamine, and that appellant had indicated that that was likewise her intent. Appellant was convicted of possession of 400 or more grams of methamphetamine with intent to deliver.

On appeal, two of appellant's grounds for review challenged the legal and factual sufficiency of the evidence to prove that she possessed with the intent to deliver a quantity of methamphetamine in an amount of 400 grams or more. She also questioned the sufficiency of the state's evidence that she had possessed the drug with the intent to deliver.

In addressing these points, the court of appeals considered the testimony of both the state-and the defense-sponsored chemists. As to the issue of quantity, it determined that, while there was no direct evidence regarding whether the liquid methamphetamine and bleach ever mixed, "there was direct testimony that one of the liquids was poured directly into the same container holding the other liquid[,]" and that it could "be reasonably inferred that the two liquids mixed when the liquid methamphetamine was initially poured into the bleach." *Jones v. State*, 195 S.W.3d at 287. The weight of controlled substance, as set out in Tex. Health & Safety Code § 481.002(5) "includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance." The court of appeals concluded that the evidence from the state's chemist established that the contents of the bleach bottle weighed 2,375.8 grams, and that the top layer was tested and determined to contain methamphetamine. Two thousand grams is more than 400 grams, thus the evidence was legally and factually sufficient to support the jury's finding that appellant possessed

400 grams or more of methamphetamine. *Id.* at 288.

The court of appeals also discussed several factors that can support a finding of intent to deliver, including the quantity of drugs possessed, and concluded that the methamphetamine being manufactured was not for personal use. *Id.* at 288–89. It thus held that the evidence, when viewed in the light most favorable to the verdict, was legally sufficient to support the jury's determination beyond a reasonable doubt that appellant intended to deliver the methamphetamine. *Id.* at 289. It likewise held that, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilt beyond a reasonable doubt, and thus the evidence was factually sufficient to support the jury's determination that appellant intended to deliver methamphetamine. *Id.*

Appellant's two grounds for review in this Court are complaints about the court of appeals's determination of how much methamphetamine she possessed.

1. The court of appeals erred by effectively negating the requirement that the State prove that a controlled substance and any alleged "adulterant" and "dilutant" must mix or otherwise combine to establish the alleged quantity of controlled substance: Did the court of appeals correctly apply *Seals v. State?*

2. The court of appeals erred in holding that household bleach is an "adulterant" or "dilutant" under the Texas Controlled Substance Act.

### Analysis

■ The term "controlled substance" describes the numerous substances listed in the schedules and penalty groups of our Controlled Substances Act, specifically "a drug, an adulterant, and a dilutant" listed in those schedules and penalty groups, which include methamphetamine. TEX. HEALTH & SAFETY CODE § 481.002(5). The term "controlled substance" also "includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance." *Id.* "'Adulterant or dilutant' means any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE § 481.002(49).

Appellant argues that the two provisions read together, as she contends they must be, "still require proof of the element of quantity beyond a reasonable doubt by establishing that the controlled substance mixed, dissolved or combined in some way with the adulterant or dilutant *resulting* in a mixture, solution or combination that acted to actually increase the bulk or quantity of the controlled substance regardless of the effect on the chemical activity of the controlled substance." (Emphasis in original.) Appellant notes that the Legislature left intact, in the basic definition of "controlled substance," the phrase, "includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance." TEX. HEALTH & SAFETY CODE § 481.002(5). She suggests that, because the Legislature did not change this plain text in response to this Court's *Cawthon v. State*, 849 S.W.2d 346 (Tex.Crim.App.1992) opinion, it did not intend to do away with the necessity for the state to prove that the controlled substance actively mixed with, dissolved in, or otherwise combined in some way with the "adulterant" or "dilutant."

The state points to our language in *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim.App.2005), explaining that "[t]he literal meaning of the legislature's adulterant and dilutant definition is that any substance that is added to or mixed with a

controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." It argues that, in this case, the bleach constituted such an adulterant or dilutant and its weight was properly included in the weight of "controlled substance." It also argues that there was evidence of the weight of the pure liquid methamphetamine before it was poured into the bleach and that that weight was also sufficient to support the jury's verdict as to the quantity of methamphetamine.

In *Melton v. State,* 120 S.W.3d 339, 344 (Tex.Crim.App.2003), we held that "the State is no longer required to determine the amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture," but rather that "[t]he State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight." Although *Melton* involved rocks of cocaine, its reasoning is analogous to liquid methamphetamine. In *Wright v. State,* 201 S.W.3d 765, 770 (Tex.Crim.App. 2006), we approved the inclusion of unusable toxic liquid in the aggregate weight of a controlled substance, specifically methamphetamine.

In the instant cause, the bleach into which the methamphetamine was poured was "added to or mixed with" the controlled substance. Regardless of when, how, or why it was added, the bleach may be added to the aggregate weight of the methamphetamine. Appellant fails to demonstrate that the court of appeals incorrectly applied *Seals* or negated any requirement of proof. Ground one is overruled.

■ At trial, the state-sponsored chemist testified that, when she analyzed the contents of the evidence that her office had received from the local police department, she found that the contents weighed 2,375.8 grams and contained methamphetamine. Although she had not been asked to identify the liquid material and did not know if it was bleach, she indicated that she considered bleach to be an adulterant or dilutant.

The defense-sponsored chemist, formerly the supervisor of the state-sponsored chemist, testified that he had analyzed samples of the contents of the bleach bottle that he had obtained from the district attorney's office. He testified that he found that the liquid was bleach and indicated that he did not find any controlled substance. On cross-examination, he stated that he found two substances, both in trace quantities, that would be consistent with oxidation products of methamphetamine. When asked about what happens when liquid methamphetamine is poured into bleach, he said that the two substances would not mix well and "[y]ou're not gonna have a whole lot of f interaction...." He also indicted that he did not consider bleach as an adulterant or a dilutant.

Thus, there was testimony from expert witnesses disagreeing on the relationship between the bleach and the methamphetamine and whether bleach was an adulterant or dilutant. The jury, as the fact finder, was free to believe or disbelieve, in whole or in part, either or both of the experts.

We hold that the court of appeals did not err in holding that the bleach was an adulterant or dilutant and therefore including its weight in the alleged weight of the methamphetamine. Appellant's second ground for review is overruled.

We affirm the judgment of the court of appeals.

COCHRAN, J., filed a concurring opinion.

HOLCOMB, J., dissented.

COCHRAN, J., filed a concurring opinion.

Adhering, as I do, to the views expressed in my dissenting opinion in *Seals v. State*,[1] that the term "adulterants and dilutants" refers to substances which increase the usable bulk or quantity of a controlled substance or are part of the manufacturing process,[2] I cannot join the majority opinion.

However, the evidence in this case was sufficient to support a finding that the weight of the "pure" liquid methamphetamine, before it was poured into the bottle of bleach, weighed more than 400 grams. Specifically, appellant's co-defendant testified that the liquid methamphetamine mixture almost filled a glass container that was approximately eight inches tall and four or five inches in diameter. The co-defendant testified that he poured the methamphetamine from this container into the bottle of bleach in an unsuccessful attempt to destroy the evidence as the police approached. The State's chemist testified that this glass container would have held 1,234.86 grams of liquid methamphetamine. This amount is three times the 400–gram minimum necessary to support a conviction under the State's indictment.

Thus, for purposes of this case, it is legally irrelevant whether one includes or excludes the weight of the corrosive bleach. Either way the evidence is sufficient to support appellant's conviction of the aggravated offense of possession of 400 or more grams of methamphetamine with intent to deliver. I therefore join in the judgment of the Court, but not its reasoning.

---

1. 187 S.W.3d 417, 423 (Tex.Crim.App.2005) (Cochran, J., dissenting).

2. *See Wright v. State*, 201 S.W.3d 765, 770 (Tex.Crim.App.2006).