02-11-196-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00196-CR

 

 


 
 
 Bryan
 Jeremiah Williams
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 235th District
 Court
  
 of
 Cooke County (10-00247)
  
 November
 1, 2012
  
 Opinion
 by Chief Justice Livingston
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 

 



 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00196-CR

 

 


 
 
 Bryan Jeremiah Williams
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 235th
District Court OF Cooke COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          Appellant
Bryan Jeremiah Williams appeals his conviction for possessing between four grams
and two hundred grams of cocaine while intending to deliver it.[2] 
In two issues, he contends that the evidence is insufficient to prove his
intent to deliver the cocaine and that the trial court erred by admitting evidence
about ammunition and a stolen gun.  We affirm.

Background
Facts

          One
day in June 2010, the Gainesville Police Department (GPD) simultaneously
executed thirteen search warrants at the homes of individuals suspected of selling
cocaine.  GPD Investigator Tim Green joined with a group of officers who
executed a no-knock search warrant at 812 Buck Street, where appellant lived.[3] 
After executing the warrant and after securing the scene, Investigator Green found
appellant standing under a carport.  Close to appellant, Investigator Green
found $10,593 in cash along with appellant’s driver’s license and his debit
card.  These items had been removed from appellant’s pockets by another
officer.

          Appellant
eventually offered to show Investigator Green “the stuff [the officers] were
looking for.”  Appellant led Investigator Green to a bedroom where Investigator
Green found a “pretty good size chunk of crack cocaine.”  The cocaine weighed
17.74 grams, which, according to Investigator Green, was among the larger
amounts of cocaine that had been found in Cooke County.  In appellant’s house, Investigator
Green also recovered a stolen handgun, ammunition, a razor blade containing
white residue, digital scales, and a letter to appellant from someone who was
incarcerated for a drug-related offense.  Appellant later admitted that the
cocaine belonged to him and said that he had intended to use it.[4]

          A
Cooke County grand jury indicted appellant for possessing the cocaine while intending
to deliver it.  Appellant pled not guilty.  After the parties filed various
pretrial documents and presented their cases,[5] the jury found appellant
guilty.  The jury heard evidence concerning appellant’s punishment and assessed
fifteen years’ confinement.  The trial court sentenced him accordingly.  This
appeal followed.

Evidentiary
Sufficiency

In his
first issue, appellant contends that the evidence is insufficient to sustain
the jury’s verdict that he intended to deliver the cocaine.  In our due-process
review of the sufficiency of the evidence to support a conviction, we view all
of the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Isassi v. State, 330 S.W.3d 633, 638 (Tex.
Crim. App. 2010).  This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.  The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Isassi, 330 S.W.3d at 638; Hooper, 214 S.W.3d
at 13.

“In
a possession with intent to deliver case, the State must prove that the
defendant:  (1) exercised care, custody, control, or management over the
controlled substance; (2) intended to deliver the controlled substance to
another; and (3) knew that the substance in his possession was a controlled
substance.”   Parker v. State, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st
Dist.] 2006, pet. ref’d); see Tex. Health & Safety Code Ann. §
481.112(a).  Appellant argues only that the evidence was insufficient to
establish his intent to deliver.

Intent
to deliver may be established through circumstantial evidence.  See Jordan
v. State, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.).  Furthermore,
“intent to deliver is a question of fact for the jury to
resolve, and it may be inferred from the acts, words, or conduct of the
accused.”  Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003,
no pet.).  Testimony by experienced law enforcement officers may be used to
establish a defendant’s intent to deliver.  Robinson v. State, 174
S.W.3d 320, 331 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  We
may consider several factors in determining such intent, including the nature
of the location where the defendant was arrested, the quantity of drugs the
defendant possessed, the manner of packaging the drugs, the presence or absence
of drug paraphernalia (for use or sale), whether the defendant possessed a
large amount of cash in addition to the drugs, and the defendant’s status as a
drug user.  Jones v. State, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth
2006) (op. on reh’g), aff’d, 235 S.W.3d 783 (Tex. Crim. App. 2007); Jordan,
139 S.W.3d at 726.  “The number of factors present is not as important as the
logical force the factors have in establishing the elements of the offense.”  Moreno
v. State, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet.
ref’d) (op. on reh’g).

Appellant argues that the location where the officers found the
cocaine, his home, is not in a high drug traffic area.  It is true that the
evidence did not reveal that any particular successful drug purchase had
occurred at appellant’s home.  However, Investigator Green testified that
during surveillance of the home, he witnessed people known to be involved in
the drug culture coming and going from the house.  Furthermore, Yusef
Stevenson, a man known to Investigator Green through previous narcotics
investigations, was found inside of the house upon the execution of the warrant.[6]  Thus, the jury could have reasonably inferred from the
evidence that appellant’s home was associated with the delivery of drugs and
that this factor weighed in favor of a finding of appellant’s intent to deliver.

Appellant next contends that the quantity of crack cocaine found
in his home is consistent with personal use rather than delivery.  But Investigator
Green testified that the quantity of cocaine found in appellant’s home, 17.74
grams, is consistent with dealing rather than using.  Investigator Green explained
that most crack cocaine users use any drugs in their possession almost
immediately and are not typically found with a large amount of cocaine. 
Moreover, the evidence established that the amount of appellant’s cocaine was
worth at least $1,700 and that cocaine is typically sold in .2 or .3 gram
portions worth $20.  Based on this evidence, the jury could have reasonably determined
that appellant’s possessing 17.74 grams of cocaine was inconsistent with
personal use.  See Rhodes v. State, 913 S.W.2d 242, 250–51 (Tex. App.—Fort
Worth 1995) (finding that evidence was sufficient to establish a defendant’s
intent to deliver 2.09 grams of crack cocaine), aff’d, 945 S.W.2d 115
(Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997); see also Mack
v. State, 859 S.W.2d 526, 528–30 (Tex. App.—Houston [1st Dist.] 1993, no
pet.) (holding that 8.9 grams of crack cocaine was consistent with a defendant’s
intent to distribute).

Appellant also argues that the evidence does not indicate intent
to deliver because the crack cocaine was found in a solid chunk in one bag and
no small baggies, which are frequently used for distribution, were found in his
home.  Appellant claims that this lack of evidence emphasizes that his cocaine
was for personal use.  But although the police did not find small plastic bags,
they did find, in various parts of the house, a razor blade, a stolen handgun, ammunition,
and two sets of digital scales with a three pound limit.  Investigator Green
testified that drug dealers frequently use digital scales to measure drug
quantities and that scales of the size found in appellant’s home indicate that
they were used to measure higher quantities than that of a typical drug user.  Also,
the jury heard that drug dealers tend to use knives or razor blades to cut the
large cookie of cocaine into smaller pieces for individual sale.  Furthermore, Investigator
Green testified that drug dealers usually keep a firearm “to protect their
interest[s]” and that those handguns are frequently stolen by drug users and
exchanged with dealers for drugs.  See Leadon v. State, No. 02-08-00163-CR,
2009 WL 1815663, at *3 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.,
not designated for publication) (considering a gun found in the defendant’s
home with drugs as evidence of the defendant’s intent to distribute).[7]

Although the police did not find plastic baggies, the record
does not establish that they found evidence that appellant is a drug user, such
as a pipe.  See Jordan, 139 S.W.3d at 726–27 (holding that although the police
found no evidence that the defendant intended to distribute drugs, they also
found no evidence indicating an intent to use the drugs, and the jury could therefore
reasonably find an intent to distribute).  Based on the other evidence
presented, the jury could have reasonably found that appellant intended to
distribute his cocaine despite the fact that no small baggies were found in his
home.  See Brown v. State, No. 02-04-00564-CR, 2006 WL 412466, at
*3 (Tex. App.—Fort Worth Feb. 23, 2006, no pet.) (mem. op., not designated for
publication) (holding similarly).

Next, appellant argues that he has a legitimate explanation for
the large amount of cash seized by the police.  During the search of appellant’s
home, the police recovered $10,593.  Appellant claims that he received $7,000
for a car that his mother had previously purchased for $150.  He also asserts
that the remaining $3,593 was given to him by the mother of his children to buy
a music studio.  Investigator Green testified that drug dealers tend to keep
large sums of cash to make transactions.  Investigator Green also testified
that drug dealers typically keep the cash on their person, rather than hidden
elsewhere, to prevent theft.  Finally, Investigator Green testified that
“rocks” of cocaine, weighing .2 to .3 grams are typically sold for $20 apiece. 
The cash that appellant possessed contained many $20 bills.  Based on Investigator
Green’s testimony, the jury could have reasonably concluded that appellant
possessed a large amount of cash because of his position as a drug dealer
instead of other reasons.

Finally, Investigator Green testified that his investigation
prior to the execution of the search warrant provided evidence of appellant’s
involvement in the delivery of cocaine.  Specifically, appellant had driven a
car from which another person had exited with the purpose of delivering
cocaine.

Viewing the evidence in the light most favorable to the jury’s
verdict and presuming that the jury resolved any conflicting inferences from
the evidence in favor of the verdict, we conclude that a rational jury could
have determined beyond a reasonable doubt that appellant intended to deliver
the cocaine.  See Tex. Health & Safety Code Ann. §
481.112(a); Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi, 330
S.W.3d at 638.  We overrule appellant’s first
issue.

Preservation of Error

In his second issue, appellant argues that the trial court erred
by admitting the stolen gun and ammunition that the police found in his home. 
Appellant contends that the gun and ammunition were more prejudicial than
probative.  See Tex. R. Evid. 403.  The State contends that appellant
forfeited his complaint about the admission of the evidence.  We agree with the
State.

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill
v. State, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the
trial court must have ruled on the request, objection, or motion, either
expressly or implicitly, or the complaining party must have objected to the
trial court’s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not
address the merits of an issue that has not been preserved for appeal.  Wilson
v. State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g).  Preservation
of error is a systemic requirement.  Archie v. State, 221 S.W.3d 695,
698 (Tex. Crim. App. 2007).

The purpose of requiring a timely objection is to give the trial
court or the opposing party the opportunity to correct the error or remove the basis
for the objection.  Martinez v. State, 22 S.W.3d 504, 507 (Tex. Crim.
App. 2000).  If a defendant fails to object until after an objectionable
question has been asked and answered, and he can show no legitimate reason to
justify the delay, his objection is untimely, and any claim of error is
forfeited.  Luna v. State, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008), cert.
denied, 130 S. Ct. 72 (2009).

In Ratliff v. State, Ratliff was convicted of possession
of less than one gram of methamphetamine.  320 S.W.3d 857, 858 (Tex. App.—Fort
Worth 2010, pet. ref’d).  The police arrested Ratliff for possessing two
marijuana cigarettes and then, upon searching the car he had been in, the
police discovered methamphetamine among other drug paraphernalia.  Id.
at 859.  Ratliff argued that the trial court erred by admitting the physical evidence
that was obtained from the car.  Id. at 860.  Ratliff filed a motion to
suppress but did not obtain a pretrial hearing or ruling on the motion.  Id.
at 861.  Furthermore, he allowed a police officer to answer several questions
regarding the evidence confiscated from the car before objecting to the
admission of the physical evidence itself.  Id.  We held that Ratliff’s
failure to object to the officer’s testimony describing the evidence from the
car forfeited any error associated with his objection to the State’s later
introduction of the evidence.  Id. at 862; see Turner v. State,
642 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (concluding
that a defendant forfeited his argument by waiting to object to the admission
of evidence until after a police officer extensively testified about the
evidence).

Investigator Green answered several questions regarding the
stolen handgun before appellant objected.  When asked what he found in
appellant’s house, Investigator Green stated, without objection, that he found
a .380 caliber handgun and .380 caliber ammunition.  Investigator Green then
identified State’s Exhibit 2, a map of the layout of appellant’s house, which included
a photograph of the handgun labeled as “STOLEN .380 CALIBER HANDGUN” and a
photograph of the ammunition labeled as “.380 CALIBER AMMUNITION.”  Appellant
did not object to the admission of State’s Exhibit 2.  Later in his testimony, Investigator
Green discussed, without an objection under Texas Rule of Evidence 403, State’s
Exhibit 7, another photograph of the box of ammunition, and State’s Exhibit 11,
another photograph of the handgun.

Eventually, appellant objected that testimony about the gun and
ammunition was more prejudicial than probative and that the actual admission of
the gun and ammunition was more prejudicial than probative.  But at that point,
like in Ratliff, significant evidence had already been admitted, without
objection, about the ammunition and the gun.

We conclude that because appellant did not timely object, he
forfeited any error associated with the admission of the evidence about the gun
and ammunition.  See Tex. R. App. P. 33.1(a); Marini v. State,
593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980); Ratliff, 320
S.W.3d at 862 (explaining that a defendant’s “failure to object at the time [a
detective] specifically described the physical evidence and explained how he
found that evidence forfeited any error associated with [the defendant’s]
objection to the State’s later introduction of the evidence”); Tell v. State,
908 S.W.2d 535, 543–44 (Tex. App.—Fort Worth 1995, no pet.) (holding that the defendant
failed to preserve error by allowing several questions and answers regarding a
ski mask before finally objecting); Thomas v. State, 884 S.W.2d 215, 216–17
(Tex. App.—El Paso 1994, pet. ref’d) (holding similarly).  We overrule
appellant’s second issue.

Conclusion

Having overruled appellant’s issues, we affirm the trial court’s
judgment 

 

 

 

                                                                   TERRIE
LIVINGSTON

CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 1, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health
& Safety Code Ann. §§ 481.102(3)(D), .112(a), (d) (West 2010).





[3]Prior to June 2010, there
had been a high amount of foot traffic and car traffic at 812 Buck Street. 
Some of the people who had visited the home were known to be involved with
illegal drugs.





[4]Appellant also conceded in
his brief that he possessed the cocaine.  Along with the cocaine, the police
found a small amount of marijuana in an automobile at the home.





[5]Although appellant did not
testify at trial, the jury heard his version of the facts (that he possessed
the cocaine but did not intend to deliver it) through the admission of
testimony that he had previously given.





[6]Appellant’s mother was
also in the home.





[7]In his brief, appellant
relies on a federal case in which the Fifth Circuit held that the evidence was
insufficient to prove the defendant’s intent to deliver drugs because, in part,
the gun that an officer had found was not physically close to the drugs.  See
United States v. Hunt, 129 F.3d 739, 743 (5th Cir. 1997).  Like in Hunt,
the gun and ammunition in this case were not close to the drugs.  But in this
case, unlike in Hunt, the State presented evidence of a large amount of
cash and of the presence of scales.  Id. at 744.  Also, the weight of
the drugs at issue in Hunt was less than half of the weight in this
case.  Id. at 741.  Finally, there is no indication from the opinion in Hunt
that the gun involved in that case was stolen, and the evidence in this case
established that the gun was stolen and that drug dealers often receive stolen
guns in exchange for delivering drugs.