**Affirmed as Modified and Opinion Filed January 26, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01482-CR

**ERICK EUGENE FORD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1355893-N**

## MEMORANDUM OPINION
Before Justices Francis, Evans, and Stoddart
Opinion by Justice Francis

A jury convicted Erick Eugene Ford of possession with intent to deliver four grams or more but less than 200 grams of heroin, and the trial court assessed punishment, enhanced by a prior conviction, at twenty years in prison. In two issues, appellant challenges the sufficiency of the evidence to support his conviction. For reasons set out below, we conclude the issues are without merit. On our own motion, we modify the trial court's judgment to make it conform to the record and affirm the judgment as modified.

Dallas police executed a search warrant at a south Dallas duplex where police suspected heroin was being sold. On arrival, the officers announced "police" and then heard "a lot of running" inside. The front door was barricaded with a cage. It took officers about one minute to pry open the cage and "slam" the front door to gain entry. Inside, three men were already lying

on the floor; a fourth man, identified as appellant, was coming out of the bathroom. After securing the house and taking the men outside, Detective Julio Ortiz went into the bathroom and saw what he believed to be about ten heroin capsules floating in the toilet. Ortiz removed the capsules and put them in a plastic bag. Police also recovered, among other things, a bottle of Dormin, which is used to "cut" heroin, cash, a pocket knife with a capsule stuck to it, and a small green baggie. They also found two baggies of pills on one of the men, Derek Rayford. One of the baggies contained ninety-two pink/clear capsules.

The officers field-tested the items they suspected to be drugs. The capsules recovered from the toilet and from Rayford tested positive for heroin, and the substance in the green baggie tested positive for cocaine. When he returned to the station, Ortiz noticed the capsules removed from the toilet had "started changing." He said they had begun to dry out, change colors, and stick together, ultimately turning into a tar-like substance. Officers weighed the drugs, and Ortiz said the total weight of the suspected heroin was 14.2 grams: 10.9 grams for the dry capsules and 3.3 grams for the tar-like substance.

The items were sent to the Southwestern Institute of Forensic Sciences lab for testing. Sarah Muhlberger, a drug chemist at SWIFS, said she received a baggie containing a "brown jelly-like material" that appeared to have "dried up." The material contained heroin and diphenhydramine and weighed 2.04 grams, including adulterants and dilutants. She did not see any pieces of capsules or "anything like that" in the material.

She also received a baggie containing ninety-two pink/clear capsules containing a brown material in powder form. Muhlberger used twenty-five of the capsules for analysis and took a sample of the brown material from each. The material contained heroin and diphenhydramine, and the total weight of the material, including adulterants and dilutants, was 2.25 grams. That material, combined with the weight of the jelly-like substance, totaled 4.2 grams, so Muhlberger

did not test the contents of the remaining sixty-seven capsules. She explained that it is SWIFS policy to analyze only enough evidence to reach a certain weight range for penalty purposes and analyzing the contents of the remaining capsules would not have reached the next penalty weight range. According to Muhlberger, the untested material inside the sixty-seven capsules was consistent with the brown powder she did analyze, and the weight was eight grams. The total weight of "everything" that was "[c]onsistent with heroin" was 12.2 grams. Muhlberger's written report, which detailed the items tested, the results, and the weight, was admitted into evidence.

Jeral Otaru, one of the men arrested during the raid, testified appellant and Rayford ran the drug house. Otaru said he purchased heroin capsules from them; the cost was $3 for one capsule or $5 for two capsules. He also ran errands for appellant and Rayford in exchange for "a caplet or two of heroin." Otaru said when the police arrived, appellant was "grabbing on his pockets, you know, reaching for his bag." Appellant ran to the back and Otaru heard "water splash," like a toilet flush.

In reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Therefore, when analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. Direct and circumstantial evidence are treated equally. *Id*.

Appellant limits his sufficiency challenges to the proof of the weight of the heroin that he possessed. In his first issue, he argues the evidence failed to establish a weight of four grams or more because the chemist improperly included the weight of thirty-five capsules (the ten capsules found in the toilet water that dissolved into a jelly-like mass and the twenty-five capsules containing powder) when reaching the total controlled substance weight of 4.2 grams.

To convict in this case, the State must show the defendant knowingly possessed the controlled substance with intent to deliver. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). A controlled substance is defined as "a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Groups 1, 1–A, or 2 through 4." *Id*. § 481.002(5). A controlled substance includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance. *Id*. An adulterant or dilutant means any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance. *Id*. § 481.002(49). Heroin is listed in Penalty Group 1. *Id*. § 481.102(2).

Assuming for purposes of this opinion that appellant is correct in arguing the dry capsules themselves should not be included in the total weight, the evidence does not show they were. The drug analysis test report was admitted into evidence. The report showed that "twenty-five pink/clear capsules containing brown material" were used for analysis; the "material contained heroin and diphenhydramine[,]" and the "total weight of the material, including adulterants and dilutants, was 2.25 grams." Thus, the report shows that only the "material" was weighed, not the capsules. The report was signed by Muhlberger, and nothing in her testimony at trial was inconsistent with the report.

As for the brown jelly-like material, Muhlberger testified she did not notice any pieces of capsule or "anything like that" mixed in the material. To the extent appellant suggests the State

–4–

had to extrapolate out the weight of the "pre-moisturized" capsules which had dissolved into the brown jelly-like material after appellant attempted to flush the capsules down the toilet, we disagree. Any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant. *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005). Detective Ortiz testified he removed the ten capsules from the toilet water and placed them in a baggie. At the police station, he noticed the capsules "started changing" and began drying out, changing colors, and getting stuck together. From this evidence the jury could have rationally concluded the capsules dissolved in the toilet water and had become mixed with the powder inside, resulting in the jelly-like substance. *See Jones v. State*, 235 S.W.3d 783, 785–86 (Tex. Crim. App. 2007) (concluding that when defendant's accomplice poured liquid methamphetamine into bottle of bleach hoping to destroy the drug during police pursuit, bleach was "added to or mixed with" the controlled substance and could be added to aggregate weight); *Seals*, 187 S.W.3d at 420 (concluding blood found mixed with methamphetamine in a vial was properly included in aggregate weight as adulterant or dilutant). We conclude the dissolved capsules became adulterants or dilutants and were properly added to the aggregate weight of the controlled substance. We overrule the first issue.

In his second issue, appellant asserts the evidence was insufficient to show the "trafficking weight" of the heroin was at least four grams. Here, he asserts the "indirect evidence" showed the ten capsules and their contents, in "pre-moisturized" form, weighed only 0.9 grams. When added to the weight of the contents of the twenty-five capsules, 2.25 grams, he asserts the "trafficking weight for the entire quantity of heroin was 3.15 grams."

It appears appellant is attempting to limit the aggregate weight of the drugs to the amount the drugs would have weighed had he not attempted to destroy them by flushing them down the

toilet. He has not cited a Texas case for his "trafficking weight" argument nor do we agree appellant benefits from his attempt to destroy evidence any more than the defendant whose accomplice attempted to do so by pouring the drugs into a bleach bottle. *See Jones*, 235 S.W.3d at 786. Having previously concluded the dissolved capsules became adulterants or dilutants and were properly added to the aggregate weight of the controlled substance, we conclude his argument is without merit.

Appellant also asserts "the weight of the 25 dry capsules, as reported by the laboratory, was not rationally entitled to any weight, since the weight of the contents of the dry capsules was not clearly established during the police investigation." He directs us to State's Exhibit 49, which shows the ninety-two capsules on a scale displaying a weight of 13.4 grams, and testimony from Ortiz that the capsules weighed 10.9 grams. It appears appellant is suggesting the inconsistent amounts determined by the police render the lab analysis incredible, although he does not explain how the police scales would affect the accuracy of the chemist's testing equipment. Muhlberger testified the lab's "balances are very specific out to the 4th decimal place of a gram." Moreover, we note State's Exhibit 49 includes the weight of the capsules, their contents, and the plastic bag in which they were contained, while the lab weighed only the material inside the capsules. We overrule the second issue.

Finally, although neither party has raised the issue, our review of the record reveals an error in the trial court's judgment. Specifically, the record reflects appellant pleaded true to an enhancement paragraph alleging a prior conviction, and the trial court accepted the plea and found the paragraph true. The judgment, however, does not reflect the correct plea or finding.

This Court has the authority to correct a judgment of the court below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). This authority is not dependent upon

a request by a party nor does it turn on the question of whether a party has objected in the trial court. *Id*. at 529–30. Accordingly, we modify the judgment to reflect a plea of true and a finding of true to the first enhancement paragraph.

We affirm the trial court's judgment as modified.

Do Not Publish
TEX. R. APP. P. 47
131482F.U05

/Molly Francis/

MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERICK EUGENE FORD, Appellant

No. 05-13-01482-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1355893-N.
Opinion delivered by Justice Francis;
Justices Evans and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect a Plea of True to the 1st Enhancement Paragraph and a Finding of True to 1st Enhancement Paragraph.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered January 26, 2015.