

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00251-CR

**DEREK MICHAEL ALEXANDER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

## From the 220th District Court
## Hamilton County, Texas
## Trial Court No. CR07684

## MEMORANDUM OPINION

In four issues, appellant, Derek Michael Alexander, challenges his conviction for unlawful possession of a controlled substance, methamphetamine, in an amount greater than one gram but less than four grams, a third-degree felony.[1]  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(a), (c) (West 2010).  We affirm as modified.

---

[1] The charged offense was enhanced to a first-degree felony based upon appellant's pleas of "true" to two enhancement paragraphs contained in the indictment, which referenced two prior felony drug convictions.  *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2012).

# I.    BACKGROUND

On November 9, 2010, Justin Caraway and Justin Slone, investigators with the Hamilton County Sheriff's Office, received a telephone call from an informant, Dennis Biggs, notifying them that Alexander was at the Hamilton Inn in Hamilton, Texas. At the time, the investigators had a felony warrant for Alexander's arrest. Based on the information provided by Biggs, Investigators Caraway and Slone proceeded to the Hamilton Inn.

Upon arriving, Investigators Caraway and Slone observed Alexander loading luggage into his vehicle. Observing this, Investigators Caraway and Slone performed a "felony take-down" of Alexander and placed Alexander under arrest. Alexander consented to a search of his hotel room and his vehicle. No drugs were found inside the hotel room; however, several incriminating items were found inside Alexander's vehicle. Investigator Caraway found a used hypodermic needle inside the front-passenger-door compartment. After finding the needle inside Alexander's vehicle, Investigator Caraway read Alexander his *Miranda* rights. Alexander waived his *Miranda* rights, and Investigator Caraway began asking questions. While Investigator Caraway spoke with Alexander, Investigator Slone searched Alexander's vehicle.

Shortly thereafter, while continuing to search Alexander's vehicle, Investigator Slone found two clear plastic baggies, which contained methamphetamine, inside of a plastic bowl. Investigator Slone also found a black backpack in the rear cargo area of the vehicle. Inside the backpack was various methamphetamine paraphernalia—two syringes, a contact case, cotton balls, and a spoon that appeared to have

methamphetamine residue on it. According to Investigator Caraway, the two syringes contained a liquid substance known on the street as a "blood bump." Investigator Caraway explained that a "blood bump" is:

> basically people will shoot up methamphetamine and right at the same time they are shooting it into their system[,] they will pull some right back out, so if they don't have any at a later time[,] it's kind of a diluted methamphetamine, but will still be enough to get you high if you need your fix.

In addition, Investigator Caraway testified that a ledger was found inside Alexander's vehicle. The ledger contained the name of Biggs and a girl with a $350 figure beside her name. Investigators also found $1,331 in cash and a used cell phone inside the vehicle.[2]

Investigator Caraway recalled that Alexander was "in shock" when he was shown the plastic baggies. Alexander also denied knowing that methamphetamine paraphernalia was inside the seized backpack, though he did admit to using methamphetamine two days earlier while in Dallas, Texas. Alexander also acknowledged that he frequently stayed with his sister and known methamphetamine traffickers, B.J. Pruitt and Daniel Dunnam. Moreover, with regard to the ledger, Alexander initially told investigators that the ledger simply accounted for money that he owed other people; however, upon further questioning, Alexander stated that the $350 notation was "for the purchase of methamphetamine from Dallas, Texas to be transported back to Hamilton." Alexander also explained that a $200 notation in the

---

[2] With regard to the money found inside the vehicle, Alexander told Investigator Caraway that he had withdrawn the money from the bank to pay some bills. However, Alexander was unable to produce any bank receipts to corroborate his story.

ledger reflected that Biggs had paid Alexander $200 of the $350 that was owed for methamphetamine.

Over objection, Investigator Caraway testified that Alexander stated that he had brought seven grams of methamphetamine to the Hamilton Inn and that this admission confirmed the information that Biggs had provided to investigators. Investigator Caraway also testified to the following without objection:

> Okay. I had asked [Alexander] how long he had been selling to Dennis Biggs and B.J. Pruitt and he said he had sold in the last two months about an ounce of methamphetamine to those subjects, which translated to me to be about 48 grams of methamphetamine, so due to Mr. Alexander's statements[,] it was my belief that he was responsible for the distribution of methamphetamine in Hamilton County.

> I asked him how much he was buying methamphetamine for in Dallas, which he replied $64.00 per gram.

> In my experience, training as a narcotics detective, I know that to be a dealer price, meaning when you deal in larger quantities of methamphetamine[,] you get a price break from the bigger dealer that you're going to.

> Usually on the street[,] if you are—typically when I make an undercover buy from somebody[,] we're going to be paying about a hundred dollars per gram, if not more.

> And that led me to believe that Mr. Alexander was—was a distributor of methamphetamine to be able to get methamphetamine at that price.

In addition, Investigator Caraway noted that it is common for people who distribute methamphetamine to use a ledger to track money that is owed.[3]

---

[3] On cross-examination, Investigator Caraway stated that he called an FBI agent on Alexander's behalf because Alexander indicated that "he was wanting to make a deal . . . ."

Bryan Kivlighn, a forensic scientist at the Texas Department of Public Safety crime laboratory, testified that he tested and weighed the contents of the two syringes and the residue contained in one of the plastic baggies. Kivlighn confirmed that the syringes and the plastic baggy contained methamphetamine in an amount of 1.25 grams and 0.01 grams, respectively.

As a result of the investigation, Alexander was charged by indictment with one count of unlawful possession of a controlled substance in an amount greater than one gram but less than four grams. *See id.* This matter was eventually tried to a jury. At the conclusion of the evidence, the jury found appellant guilty of the charged offense. Appellant pleaded true to two enhancement paragraphs contained in the indictment, and the trial court subsequently sentenced appellant to thirty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed motions for new trial and in arrest of judgment, both of which were overruled by operation of law. *See* TEX. R. APP. P. 21.8 (a), (c). This appeal followed.

## II. EXTRANEOUS-OFFENSE EVIDENCE

In his first issue, Alexander contends that the trial court abused its discretion by allowing evidence of extraneous conduct, which tended to show that he had been purchasing large quantities of methamphetamine in Dallas and distributing it in Hamilton County.

### A. Standard of Review

We review the trial court's admission of evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is

within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344. We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

**B.    Facts**

On appeal, Alexander's complaint centers on the introduction of evidence regarding the content of Biggs's tip and the evidence that substantiated the accuracy of the tip. Specifically, Alexander complains about testimony establishing that he purchased methamphetamine from a dealer in Dallas and then re-sold the methamphetamine to people, including Biggs, in Hamilton County. The State made several attempts to introduce this testimony. On the final occasion, the following exchange occurred:

| The State: | Investigator, after confronting Mr. Alexander with the contents of this black bag what discussions did you have with him? |
|---|---|
| Investigator Caraway: | Again, we were talking to Derek about his role in methamphetamine. |

I asked Derek when was the last time he had brought methamphetamine to Hamilton County and how much he had brought to Hamilton County at that time.

He answered me, told me he had brought seven grams—

[Defense counsel]: Objection to extraneous, Your Honor. Objection to the extraneous information. I believe you have already ruled on this testimony.

THE COURT: State?

The State: Your Honor, this goes along with the offense with which Mr. Alexander's charged that [defense counsel] said the State would be unable to show. We are offering to corroborate Mr. Alexander's statements.

THE COURT: Counsel, come up. . . .

Which one are we going to see the seven grams?

The State: We are not. I mean this goes along with what the affidavit—what the confidential informant told the deputies that [defense counsel] referenced in his opening statement.

THE COURT: Okay. You are going to have to make that clear. That's not clear at all.

The State: Okay. Your Honor, since we can't go into the weight of the drugs that were located, the officers—since they did not weigh them. They were weighed by—by DPS. They can't testify to the quantity, the weight of the methamphetamine?

THE COURT: Well, I understand, but you are going to have to tie it together, because it's not at all now.

. . . .

| | |
|---|---|
| The State: | What was Mr. Alexander's response? |
| Investigator Caraway: | He said that he had brought seven grams— |
| [Defense counsel]: | Same objection, Your Honor, asking for extraneous information. |
| THE COURT: | Counsel, we are back to the same place, objection is sustained at this point. |
| The State: | Did the information that you discussed with Mr. Alexander—did that confirm what Mr. Biggs had told you? |
| Investigator Caraway: | Yes, sir. Through further discussion with Mr. Alexander[,] I had asked him how long he had been selling methamphetamine to Biggs— |
| [Defense counsel]: | Objection, Your Honor. We are at the same exact place. |
| THE COURT: | I don't think so any longer. |

Investigator Caraway proceeded to testify about his discussion with Alexander and how Alexander admitted to selling about 48 grams of methamphetamine to Biggs and B.J. Pruitt in the last two months in Hamilton County.

## C.    Discussion

The State contends that, among other things, any error associated with the admission of this testimony was cured because the complained-of evidence was admitted elsewhere without objection. We agree.

Earlier in Investigator Caraway's testimony the following exchange took place without objection:

| | |
|---|---|
| The State: | What did you do after confronting Mr. Alexander with the contents—the blood bumps? |
| Investigator Caraway: | Eventually in the video it will show Mr. Alexander does confirm the syringe did contain methamphetamine and also later in the search we found a paper ledger inside the vehicle. |
| | I opened that ledger and observed there to be currently (sic) transactions with names inside the ledger.  One of the names located inside that ledger was Dennis Biggs and a—I believe another girl's name in there was for $350.00. |
| | I approached Mr. Alexander and spoke to him about the—the ledger in there and the names found inside there, asked what that meant. |
| | At first[,] he had basically told me that he just owed him some money. |
| | Later in the investigation when I'm questioning Mr. Alexander what—found out that actually the $350.00 notation in the ledger is for the purchase of methamphetamine from Dallas, Texas[,] to be transported back to Hamilton. |
| | There was a notation in there for $200.00, which Derek stated that Biggs had paid him $200.00 of the $350.00 that was owed for the methamphetamine. |

Later, Biggs testified that he had provided Investigator Caraway with information about Alexander selling methamphetamine in Hamilton County.  Biggs stated that he

had told Investigator Caraway about two different drug cases involving Alexander, including this one. Alexander did not object to this testimony provided by Biggs.

Under Texas law, a party must continue to object each time inadmissible evidence is offered unless counsel has obtained a running objection or made a proper objection in a hearing outside the presence of the jury—neither of which transpired here. *Haley v. State*, 173 S.W.3d 510, 516-17 (Tex. Crim. App. 2005); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 1993); *see also* TEX. R. EVID. 103(a)(1). Moreover, any error in admitting evidence is cured when the same evidence is admitted elsewhere without objection. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

Here, the unobjected-to testimony of Biggs and Investigator Caraway established that Alexander had purchased methamphetamine in Dallas to eventually sell in Hamilton County. Further, Investigator Caraway testified about Alexander's statements that he had sold about 48 grams of methamphetamine to Biggs and Pruitt in the last two years in Hamilton County. In addition, Biggs noted that Alexander was involved in two different drug cases, including this one. Therefore, because the purported extraneous-offense evidence was admitted elsewhere without objection, any error in admitting the evidence was cured. *See Lane*, 151 S.W.3d at 193; *see also Leday*, 983 S.W.2d at 718.

Based on the foregoing, we cannot say that the trial court abused its discretion in overruling Alexander's objection and admitting the complained-of evidence. *See De La*

*Paz*, 279 S.W.3d at 343; *see also Prible*, 175 S.W.3d at 731. Accordingly, we overrule Alexander's first issue.

### III.    THE JURY CHARGE

In his third issue, Alexander argues that the trial court erred by failing to give definitions of "adulterants" and "dilutants" in the jury charge. Alexander admits that he did not object to the charge as submitted to the jury. Nevertheless, he asserts that the trial court's failure to define these terms in the charge caused egregious harm.

### A.    Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.     Discussion**

Here, the jury charge indicated that Alexander was guilty of possession of methamphetamine if the State proved beyond a reasonable doubt that:  (1) he possessed methamphetamine; (2) the methamphetamine was, by aggregate weight, including adulterants and dilutants, one gram or more; and (3) he knew that he possessed a controlled substance.   The definition portion of the charge included definitions for possession and knowing possession.  Alexander correctly notes that the charge did not include a definition of adulterants and dilutants.

However, assuming, without deciding, that it was error to not include specific definitions for adulterants and dilutants, we are not convinced that Alexander suffered egregious harm.  Alexander's third issue is premised on a finding that the State did not prove that the aggregate weight of the tested material exceeded one gram—a theory we reject later.  In fact, in our analysis of Alexander's second issue, we note that the State needed only prove beyond a reasonable doubt that the aggregate weight of the controlled substance, including adulterants and dilutants, exceeded one gram, regardless of when, how, or why the additional substances were added to the controlled substance. *See Jones v. State*, 235 S.W.3d 783, 785-86 (Tex. Crim. App. 2007); *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005); *Melton v. State*, 120 S.W.3d 339, 344 (Tex.

Alexander v. State                                                                                                          Page 12

Crim. App. 2003). In doing so, the State offered the testimony of Kivlighn, who opined that the aggregate weight of the contents of the syringes and baggy was 1.26 grams. Kivlighn's report reflecting the aggregate weight of the contents of the syringes and baggy was admitted without objection. Furthermore, it is noteworthy that Alexander admitted that the methamphetamine found inside the vehicle was his. Investigators also found additional items—ledgers and $1,331 in United States currency—inside Alexander's vehicle that, according to investigators, are typically used by drug dealers. In other words, the evidence against Alexander was overwhelming. Moreover, at trial, Alexander's defensive theory was that the methamphetamine was planted in his vehicle by Biggs.

In determining the actual degree of harm we examine the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and other relevant information revealed by the record of the trial as a whole. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. And based on our review of the entire record, we do not believe that the purported error affected the very basis of the case, deprived Alexander of a valuable right, or vitally affected his defensive theory. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. Accordingly, we cannot say that Alexander was egregiously harmed by the purported error of failing to include definitions of "adulterant" and "dilutant" in the jury charge. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. We overrule Alexander's third issue.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second issue, Alexander contends that the evidence was insufficient to prove that the quantity of methamphetamine he possessed, including adulterants and dilutants, but excluding other materials, weighed at least one gram.

### A. Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct

evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Here, the State was required to prove beyond a reasonable doubt that Alexander intentionally or knowingly possessed methamphetamine in an amount of one gram or more but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(a), (c); *see also id.* § 481.032 (West Supp. 2012) (listing methamphetamine as a Schedule II controlled substance).

**B.      Discussion**

In *Cawthon v. State*, the Texas Court of Criminal Appeals held that the State must prove the following four elements if it wished to include an adulterant or dilutant in the aggregate weight of the controlled substance:

> (1) the identity of the named illegal substance, (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, and (4) the weight of the illegal substance, including any adulterants and/or dilutants.

849 S.W.2d 346, 349 (Tex. Crim. App. 1992), *superseded by statute*, TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (West 2010), *as recognized in Seals*, 187 S.W.3d at 420. The *Seals*

court recognized that the second and third elements articulated in *Cawthon* had the practical effect of requiring the State "to identify the alleged adulterant or dilutant to show that it did not affect the chemical activity of the illegal substance and that it was added to increase the bulk or quantity of the final product." *Seals*, 187 S.W.3d at 420.

However, in 1997, the Texas Legislature amended the Texas Health and Safety Code's definition of a "controlled substance." *See* Act of May 26, 1997, 75th Leg., R.S., ch. 745, § 1, 1997 Tex. Gen. Laws 2411. The legislature amended the definition to include a substance containing "an adulterant" or "a dilutant." *Id.* The legislature also added that the definition include the "aggregate weight of any mixture, solution, or other substance containing a controlled substance."[4] *Id.* Furthermore, the Texas Court of Criminal Appeals has since held that the revised definition of a "controlled substance" no longer requires the State "to determine the amount of controlled substance *and* the amount of adulterant and dilutant that constitute the mixture." *Melton*, 120 S.W.3d at 344 (emphasis in original). Instead, the State need prove "only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight." *Id.*; *see Jones*, 235 S.W.3d at 785-86 (holding that, where defendant had poured methamphetamine into a bottle of bleach, the bleach could be used to determine the aggregate weight of the methamphetamine

---

[4] Indeed, section 481.002(5) of the Texas Health and Safety Code provides that a controlled substance is "a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4." TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (West 2010). Section 481.002(5) further provides that this definition "includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance." *Id.* Furthermore, section 481.002(49) clarifies that an adulterant or dilutant includes "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." *Id.* § 401.002(49).

"[r]egardless of when, how, or why it was added"); *see also Seals*, 187 S.W.3d at 420 (noting that the "literal meaning of the legislature's adulterant and dilutant definition is that any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant").

Here, Kivlighn testified that he tested the contents of the two syringes and the plastic baggy. The contents of the syringes and the plastic baggy tested positive for methamphetamine. Kivlighn further opined that the contents of the syringes weighed 1.25 grams, and the contents of the plastic baggy weighed 0.01 grams—an aggregate weight of 1.26 grams. Kivlighn's report reflecting the test results was admitted into evidence without objection. On cross-examination, Alexander's counsel questioned Kivlighn about the substances contained in the syringes. Kivlighn admitted that he was unable to identify every component of the liquid contained in the syringes. And by questioning Kivlighn about "blood bumps," Alexander insinuated that the aggregate weight of the methamphetamine contained in the syringes and plastic baggy was much less than 1.26 grams. Alexander's appellate arguments are substantially similar to those made in the trial court.

As noted earlier, the Texas Court of Criminal Appeals has stated that any substance added to or mixed with a controlled substance can be considered an adulterant or a dilutant and can be added to the aggregate weight of the controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5), (49); *see also Jones*, 235 S.W.3d at 785-86; *Seals*, 187 S.W.3d at 402; *Melton*, 120 S.W.3d at 344. Therefore, because

the liquid from the syringes tested positive for methamphetamine, a controlled substance, the identification of the other substances in the syringes is irrelevant. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5), (49); *see also Jones*, 235 S.W.3d at 785-86; *Seals*, 187 S.W.3d at 402; *Melton*, 120 S.W.3d at 344. Moreover, contrary to Alexander's assertion, Kivlighn was not obligated to identify the other substances in the syringes as adulterants or dilutants for them to be added to the aggregate weight of the controlled substance. *See Jones*, 235 S.W.3d at 785-86; *Seals*, 187 S.W.3d at 402; *Melton*, 120 S.W.3d at 344. The State needed only prove "that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight," which it did here. *See Melton*, 120 S.W.3d at 344. Kivlighn stated that the contents of the syringes and the plastic baggy tested positive for methamphetamine and that the aggregate weight of the substances was 1.26 grams. This testimony is sufficient to support the jury's determination that Alexander unlawfully possessed methamphetamine in an amount greater than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(a), (c); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. As such, we overrule Alexander's second issue.

## V. THE BILL OF COSTS

In his fourth issue, Alexander complains about the bill of costs. Specifically, Alexander argues that the bill of costs should be modified to: (1) reduce consolidated-court costs from $153 to $133; (2) reduce the criminal-district-clerk fee from $60 to $40; and (3) eliminate the "Criminal-State Judicial Support," "Time Payment," "Criminal-Co.

Drug Court," and "Crim. Dist. Court Tech" fees because these fees do not compensate anybody associated with this case and, thus, are penalties. The State responds, without citing authority, that the bill of costs is correct.

## A.    Consolidated-Court Costs

The fee associated with consolidated-court costs derives from section 133.102 of the Texas Local Government Code, which provides the following: "A person convicted of an offense shall pay as a court cost, in addition to all other costs: (1) $133 on conviction of a felony . . . ." TEX. LOC. GOV'T CODE ANN. § 133.102 (West Supp. 2012). As mentioned above, Alexander was convicted of a first-degree felony. As such, the bill of costs should reflect that the consolidated-court costs in this case were $133. However, the bill of costs reflects a $153 charge, and the State does not adequately explain the discrepancy. An appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Because section 133.102 of the local government code only authorizes a fee of $133 for consolidated-court costs, we modify the bill of costs and, in turn, the judgment to reflect a $133 fee for consolidated-court costs. *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27-28; *French*, 830 S.W.2d at 609.

**B. Criminal-District-Clerk Fee**

In the itemized bill of costs, Alexander was charged $60 for the criminal-district-clerk fee. However, article 102.005 of the Texas Code of Criminal Procedure provides that: "A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40." TEX. CODE CRIM. PROC. ANN. art. 102.005 (West 2006). Because article 102.005 only provides for a $40 criminal-district-clerk fee, we modify the bill of costs and, in turn, the judgment to reflect a $40 criminal-district-clerk fee. *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27-28; *French*, 830 S.W.2d at 609.

**C. The Elimination of Other Fees**

As stated above, Alexander argues that the "Criminal-State Judicial Support," "Time Payment," "Criminal-Co. Drug Court," and "Crim. Dist. Court Tech" fees should be eliminated because these fees do not compensate anybody associated with this case and, thus, are penalties. We disagree.

Each of these fees is mandated by statute. *See* TEX. LOCAL GOV'T CODE ANN. §§ 133.103(a) (West Supp. 2012) (requiring all persons convicted of an offense to pay a $25 time-payment fee), 133.105(a) (West 2008) (requiring all persons convicted of any offense to pay a fee in support of court-related purposes), 133.107(a) (West Supp. 2012) (requiring all persons convicted of any offense to pay a fee in support of indigent-defense representation); *see also* TEX. CODE CRIM. PROC. ANN. arts. 102.0169 (West Supp. 2012) (providing that a defendant convicted of a criminal offense in district court shall pay a district-court-technology fee), 102.0178(a) (West Supp. 2012) (providing that a

person convicted of an offense under Chapter 481 of the Texas Health and Safety Code shall pay costs attendant to certain intoxication and drug convictions); TEX. GOV'T CODE ANN. § 102.021(18) (providing, among other things, that upon conviction under Chapter 481 of the Texas Health and Safety Code, a defendant must pay costs to help fund drug-court programs). Furthermore, Alexander has not cited authority holding that these statutorily-mandated fees constitute penalties. We are not persuaded that these statutorily-mandated fees, most of which Alexander benefitted from, amount to penalties that cannot be included in the bill of costs. *See Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009) (holding that "court costs are not punitive and, therefore, did not have to be included in the oral pronouncement of sentence . . . as a precondition to their inclusion in the trial court's written judgment"). Accordingly, we decline to eliminate these fees from the judgment and the corresponding bill of costs. *See id.*

Based on the foregoing, we modify the consolidated-court costs and criminal-district-clerk fee to reflect fees of $133 and $40, respectively. We overrule Alexander's fourth issue in all other respects.

## VI. CONCLUSION

We modify the trial court's judgment to reflect a reduction in costs from $153 to $133 for consolidated-court costs and from $60 to $40 for the criminal-district-clerk fee. We affirm the judgment as modified.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed as modified
Opinion delivered and filed October 31, 2013
Do not publish
[CRPM]