

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00153-CR

_____

WILLIAM BRANDON UZZELL, Appellant

V.

THE STATE OF TEXAS

On Appeal from 355th District Court
Hood County, Texas
Trial Court No. CR15467

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

A jury convicted Appellant William Brandon Uzzell of possessing, with the intent to deliver, more than 4 grams but less than 200 grams of a controlled substance, namely methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d). On appeal, Uzzell argues in three issues that (1) the evidence is legally insufficient to support his conviction; (2) even if the evidence were sufficient, the required exclusion of certain purportedly uncorroborated accomplice-witness testimony renders the evidence legally insufficient; and (3) the trial court erred by failing to include an accomplice-witness instruction in the jury charge. We will affirm.

## I. BACKGROUND

On January 5, 2022, Rosa Hernandez called Granbury Police Detective Richard Branum and reported that she had seen a large quantity of methamphetamine in the front bedroom of her house where Uzzell had been residing. After receiving this tip and confirming that Uzzell had outstanding warrants, Detective Branum arranged for officers to go to Hernandez's house to arrest him.

Officer Dakota Kerr was one of the officers sent to arrest Uzzell. When Officer Kerr knocked on Hernandez's front door, Uzzell answered and came outside. Officer Kerr then asked Uzzell to identify himself, but he refused. Nevertheless, because Officer Kerr recognized Uzzell from his investigation, he handcuffed him and arrested him on the outstanding warrants. During the arrest, Officer Kerr asked

Uzzell for permission to search his room, but he refused consent, stating at one point, "You don't have the right to check my room."

Hernandez gave the officers consent to search her house's common areas and her bedroom. When searching these areas, officers found a box for a glass pipe that is commonly used to smoke methamphetamine and a pill bottle containing prescription pills that did not belong to either Hernandez or Uzzell. Based on these findings, the officers were able to obtain a warrant to search Uzzell's room (i.e., the front bedroom).

While searching the room, officers found numerous baggies containing a crystalline powder substance—later confirmed to be methamphetamine—in a black magnetic box located inside a dresser drawer and in a paint container stored inside a bin next to the bed. In all, officers recovered approximately 14 grams of methamphetamine from Uzzell's room. Besides the methamphetamine, officers found a digital scale, cut blue straws with powder residue in them, a cellphone box containing used syringes, a pocketknife, and electrical tape. A guitar and male clothing were also found in the room. Uzzell admitted that the guitar belonged to him.

Uzzell was indicted for possessing, with the intent to deliver, more than 4 grams but less than 200 grams of methamphetamine.[1]  He pleaded not guilty, and a jury trial was held.

At trial, the primary dispute centered around whether Uzzell had actually been living in the front bedroom of Hernandez's house where the methamphetamine was found.  Hernandez testified that she had run into Uzzell, whom she knew from high school, at a game room in November 2021 and that shortly thereafter he had asked about renting the spare bedroom in her house because he needed a place to stay.  She recounted that she had asked her sister Maria Ortiz, who owns the home and rents it to Hernandez, if it would be okay for Uzzell to move into the spare bedroom; that her sister had granted permission; and that Uzzell had moved in near the end of December 2021.  Ortiz confirmed that Hernandez had asked her if Uzzell could live in the spare bedroom, that Uzzell had also spoken to her directly about it, and that she had granted permission for him to live there "as long as he needed."  She also testified that Uzzell had moved into the house's front bedroom and that she had seen what appeared to be his belongings—including a guitar—in that room when she had gone to the house to talk with him.

---

[1]The indictment also included a mere-possession charge (i.e., possession without the intent to deliver).  *See* Tex. Health & Safety Code Ann. § 481.115(a), (d). But at trial, the State waived this charge and proceeded only on the intent-to-deliver charge.

Hernandez recalled that after she returned home from her birthday dinner on January 4, 2022, Uzzell had called her into his room and had asked her if she was looking for any methamphetamine. She testified that she had seen a bag of methamphetamine on Uzzell's bed and that this had concerned her because she had pending drug charges and was worried about getting in trouble. She remembered thinking that because Uzzell did not have a job, he would likely have to sell the methamphetamine to pay for his living expenses. This prompted her to contact Detective Branum to report the drugs.

Uzzell testified at trial and offered a radically different version of events. According to Uzzell, he did not run into Hernandez at the game room until January 4, 2022 (i.e., the night before his arrest). He claimed that Hernandez asked him to come over to her house that night to diagnose a plumbing problem and to give her an estimate for the repairs.[2] He testified that he had arrived at Hernandez's house around midnight and that he and Hernandez had hung out for a while before having sex. He claimed that he had then fallen asleep and had not gotten out of bed until shortly before the police arrived to arrest him the following day. After being questioned about how his guitar ended up in Hernandez's house, he explained that he typically took his guitar "everywhere" he went because he played a lot of gigs at bars and restaurants.

---

[2]Uzzell testified that he is a master plumber.

He also asserted that a man named Roger had been in the house when he arrived. Uzzell claimed that Hernandez had told him that Roger had been living there, and he theorized that the methamphetamine found in the house actually belonged to Roger.[3]

After considering all of the evidence, the jury found Uzzell guilty and assessed his punishment at 13 years in prison and a $5,000 fine. The trial court sentenced him accordingly. This appeal followed.[4]

## II. DISCUSSION

## A. The Evidence Is Sufficient to Support Uzzell's Conviction

In his first issue, Uzzell contends that the evidence is legally insufficient to support his conviction. We disagree.

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[3]Hernandez testified that no one named Roger had ever lived in her house and that she did not "have any idea who that person is."

[4]Uzzell also filed a motion for new trial, which was denied after a hearing.

6

inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the

7

State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## 2. Analysis

To convict Uzzell of the charged offense, the jury was required to find beyond a reasonable doubt that he "(1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance." *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Uzzell contends that a rational jury could not have found beyond a reasonable doubt that he exercised care, custody, control, or management over the methamphetamine found in the front bedroom of Hernandez's residence or that he intended to deliver it. Thus, we must consider the evidence supporting both of these elements.

### a. Care, Custody, Control, or Management

When, as here, the accused is not in exclusive possession of the place where the controlled substance is found, it cannot be concluded that he had knowledge of and

8

control over the contraband unless there are additional independent facts and circumstances which affirmatively link him to the contraband. *Harris v. State*, 173 S.W.3d 575, 579 (Tex. App.—Fort Worth 2005, no pet.) (citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). Texas courts have identified a nonexhaustive list of factors that may affirmatively link the accused to the controlled substance. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). These factors include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The number of affirmative links present is not as important as "the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

Here, the evidence showed that Uzzell answered when Officer Kerr knocked on Hernandez's front door and was the only person in the home at the time. Further, Ortiz and Hernandez testified that Uzzell had been living in the room in which the

9

methamphetamine was found; Uzzell's guitar and men's clothing were found in the room; and shortly after being arrested, Uzzell told Officer Kerr that he did not "have the right to check *my room*." [Emphasis added.] *See Leija v. State*, 738 S.W.2d 749, 751 (Tex. App.—San Antonio 1987, no pet.) (noting that appellant's referring to room where contraband was found as "my room" was a factor affirmatively linking him to it). Finally, Uzzell indicated a consciousness of guilt by failing to identify himself to Officer Kerr and by refusing to consent to a search of the room where the methamphetamine was ultimately found. *See Rave v. State*, No. 03-98-00159-CR, 1999 WL 249418, at *2 (Tex. App.—Austin Apr. 29, 1999, no pet.) (not designated for publication) ("[A]ppellant's failure to properly identify himself indicates a consciousness of guilt."); 2 Clifford S. Fishman & Anne Toomey McKenna, Jones on Evidence § 13:7 (7th ed. 2024) ("A suspect's refusal to give his name . . . support[s] an inference of consciousness of guilt . . . ."); *see also Gibson v. State*, Nos. 01-02-01261-CR, 01-02-01262-CR, 2003 WL 22311181, at *3 (Tex. App.—Houston [1st Dist.] Oct. 9, 2003, no pet.) (mem. op., not designated for publication) (noting that defendant indicated consciousness of guilt when he refused to consent to search and then asked officer why consent had been requested).

Although Uzzell testified that he was merely an overnight guest in Hernandez's home and had never been inside the room in which the methamphetamine was found, the jury, as the sole judge of the evidence's weight and credibility, was free to reject this testimony. *See Thomas v. State*, No. 02-15-00216-CR, 2016 WL 3889146, at *2

(Tex. App.—Fort Worth July 14, 2016, no pet.) (mem. op., not designated for publication) (first citing *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015); and then citing *Hernandez v. State*, 161 S.W.3d 491, 500 & n.28 (Tex. Crim. App. 2005)). Given the other evidence affirmatively linking Uzzell to the methamphetamine, the jury simply may have not believed Uzzell's version of events. *See Alhejjei v. State*, No. 01-05-00072-CR, 2006 WL 241487, at *4 (Tex. App.— Houston [1st Dist.] Feb. 2, 2006, pet. ref'd) (mem. op., not designated for publication) (citing *McKinny v. State*, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.] 2002, no pet.)); *see also Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (holding that the affirmative link between the appellant and the controlled substance need not be so strong that it excludes every other outstanding reasonable hypothesis except the appellant's guilt).

In sum, we conclude that the evidence's logical force is strong enough to allow a rational jury to affirmatively link Uzzell to the methamphetamine found in the front bedroom of Hernandez's home. *See Nhem*, 129 S.W.3d at 700. Thus, the record contains sufficient evidence to show that Uzzell exercised care, custody, control, or management over the methamphetamine. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622; *see also Evans*, 202 S.W.3d at 162.

### b. **Intent to Deliver**

Intent to deliver may be established through circumstantial evidence. *See Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.). A defendant's

11

intent is a question of fact for the jury to resolve and "may be inferred from the acts, words, or conduct of the accused." *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Testimony by experienced law enforcement officers may be used to establish a defendant's intent to deliver. *Robinson v. State*, 174 S.W.3d 320, 331 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We may consider several factors in determining such intent, including the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia (for use or sale), whether the defendant possessed a large amount of cash in addition to the drugs, and the defendant's status as a drug user. *Jones v. State*, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth 2006) (op. on reh'g), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007); *Jordan*, 139 S.W.3d at 726. As with the possession element, "[t]he number of factors present is not as important as the logical force" of all of the evidence. *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (op. on reh'g).

Here, Officer Kerr and Detective Branum both testified that the quantity of methamphetamine found exceeded the amount typically held for personal use. The methamphetamine was found in small bags, indicating that it had been packaged for sale. Officers also found numerous empty small baggies, a digital scale, and a magnetic box commonly used to conceal drugs—all of which are consistent with an

12

intent to deliver. And Uzzell admitted to being a drug user and to associating with "a lot of people" who used drugs.

This evidence's logical force is strong enough to allow a rational jury to find beyond a reasonable doubt that Uzzell intended to deliver the methamphetamine. *See Moreno*, 195 S.W.3d at 326. Thus, the record contains legally sufficient evidence of Uzzell's intent to deliver. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

### c. Disposition of First Issue

Having concluded that the record contains legally sufficient evidence to show that Uzzell exercised care, custody, control, or management over the methamphetamine and that he intended to deliver it, we overrule his first issue.

## B. Because Hernandez's Testimony Was Sufficiently Corroborated, (1) The Evidence Is Legally Sufficient Regardless of Her Accomplice-Witness Status and (2) The Lack of an Accomplice-Witness Instruction in the Jury Charge Did Not Cause Uzzell Egregious Harm

Uzzell's second and third issues are based on his contention that Hernandez qualifies as an accomplice because, as "the primary caretaker and possessor of the residence" where the methamphetamine was found, she could have been charged with its possession. *See Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013) ("A witness is an accomplice as a matter of law when the witness has been charged with the same offense as the defendant or a lesser-included offense, or 'when the evidence clearly shows that the witness could have been so charged.'" (quoting *Cocke v. State*,

13

201 S.W.3d 744, 747–48 (Tex. Crim. App. 2006)). In his second issue, Uzzell contends that Hernandez's purported accomplice-witness testimony is the only evidence showing that he had entered, much less lived in, the room where the methamphetamine was found and that because her testimony is uncorroborated, the evidence is legally insufficient to sustain his conviction. In his third issue, he contends that he was egregiously harmed by the trial court's failure to include an accomplice-witness instruction in the jury charge. But Hernandez's testimony was sufficiently corroborated; thus, even if we were to accept Uzzell's contention that Hernandez qualifies as an accomplice, the evidence is nevertheless sufficient to sustain Uzzell's conviction, and the trial court's failure to include an accomplice-witness instruction in the jury charge was harmless.

### 1. Accomplice-Witness Rule: Applicable Law and Standard of Review

"Texas law provides that '[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[.]'" *Zamora*, 411 S.W.3d at 509 (quoting Tex. Code Crim. Proc. Ann. art. 38.14). This rule, commonly referred to as the "accomplice-witness rule," reflects the legislature's recognition "that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or [to] shift blame to another person." *Id.* (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)).

14

When an appellant challenges the sufficiency of the evidence corroborating an accomplice's testimony, "the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (citing *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). The sufficiency of nonaccomplice evidence is judged according to the facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). We do not independently construe the nonaccomplice evidence but instead defer to the factfinder's resolution of it. *Id.*

"[T]he tends-to-connect standard does not present a high threshold." *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.) (quoting *In re C.M.G.*, 905 S.W.2d 56, 58 (Tex. App.—Austin 1995, no writ)). To meet the rule's requirements, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016); *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). Rather, the evidence—whether direct, circumstantial, or both—must show that rational jurors could have found that it sufficiently tended to connect the accused to the offense.

*Smith*, 332 S.W.3d at 442; *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

## 2. The Evidence Sufficiently Corroborates Hernandez's Testimony

Uzzell asserts that without Hernandez's testimony, there is no evidence that Uzzell lived in—or even entered—the room where the methamphetamine was found. But the record belies this assertion.

As detailed above, Ortiz testified that she had spoken directly with Uzzell about living in the room where the methamphetamine was found and had granted him permission to live there. She also testified that Uzzell had, in fact, moved in and that she had seen what appeared to be his belongings—including his guitar—in that room when she had gone to Hernandez's house to speak with Uzzell. Officer Kerr testified that Uzzell answered the door when he knocked and appeared to be alone in the house when the officers arrived. Further, Uzzell referred to the room as "my room" when speaking to Officer Kerr. And officers found Uzzell's guitar and men's clothing in the room.

Viewing this evidence in its totality and deferring to the jury's resolution of it, *see Smith*, 332 S.W.3d at 442, we hold that a rational jury could have found that it tended to connect Uzzell to the charged offense. *See* Tex. Code Crim. Proc. Ann. art. 38.14; *Smith*, 332 S.W.3d at 443; *Qualls v. State*, 547 S.W.3d 663, 672 (Tex. App.—Fort Worth 2018, pet. ref'd). We therefore hold that even if Hernandez qualifies as an accomplice, her testimony was sufficiently corroborated by both Ortiz and Uzzell

16

himself and was properly considered by the jury. *See Qualls*, 547 S.W.3d at 672; *Jones v. State*, No. 14-03-00650-CR, 2005 WL 549541, at *3 (Tex. App.—Houston [14th Dist.] Mar. 10, 2005, pet. ref'd) (mem. op., not designated for publication). Thus, regardless of whether Hernandez qualifies as an accomplice, the evidence is legally sufficient to sustain Uzzell's conviction.

We overrule Uzzell's second issue.

### 3. The Failure to Include an Accomplice-Witness Instruction in the Jury Charge Did Not Cause Uzzell Egregious Harm

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Preservation of charge error does not become an issue until we assess harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* When, as here, the appellant did not object to the charge, we will not reverse unless the record shows "egregious harm." *Id.* at 743–44.

The egregious-harm standard is difficult to meet and requires a showing that the appellant was deprived of a fair and impartial trial. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Under this standard, "the omission of an accomplice[-]witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d

621, 632 (Tex. Crim. App. 2002) (quoting *Saunders v. State*, 817 S.W.2d 688, 689 (Tex. Crim. App. 1991)). As detailed above, the record contains ample evidence corroborating Hernandez's testimony that Uzzell had lived in the room where the methamphetamine was found. This corroborating evidence is far from unconvincing. Therefore, the failure to include an accomplice-witness instruction in the charge was harmless. *See id.*; *In re C.M.*, No. 11-02-00150-CV, 2003 WL 1414436, at *2 (Tex. App.—Eastland Mar. 20, 2003, no pet.) (mem. op.).

We overrule Uzzell's third issue.

## III. CONCLUSION

Having overruled all of Uzzell's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 5, 2025